## HINDS *versus* CHAMBERLIN.

A bond to indemnify an individual against any publick prosecution which may be instituted by certain other individuals, for an alleged offence, is illegal, and a promissory note given in consideration of receiving such bond is void.

And if such note is given for the costs of a civil suit, which had been instituted to recover damages for the private injury arising from such offence, and also in consideration of receiving such bond, the contract being entire, and a part of the consideration being illegal, an action cannot be sustained upon the note for any portion of the amount.

ASSUMPSIT upon a promissory note, dated April 23, 1831, for $25.

Upon the trial, at the common plea's sittings, May term, 1833, it appeared in evidence that prior to the 25th of April, 1831, one Levi Bean had commenced suits against the defendant and other individuals, for an alleged assault and battery, which suits were then pending, that on the 23d of April the parties met at the office of the plaintiff, for the purpose of effecting a settlement—that it was then agreed that the defendant should give the note in question, with other notes, and that the other defendants in those suits should also give notes, amounting in the whole to $325, for damages, costs, and expenses—and that the plaintiff should give them a bond, with condition to indemnify them against any prosecution, publick or private, which might be instituted, aided, or abetted by certain other individuals—and that the suits which had been commenced should be discharged.

A witness testified that the defendants in those suits refused to settle unless such bond was executed.

It was further in evidence, that on the 25th of April, a settlement was effected. The note in question was then delivered to the plaintiff, and a bond executed and delivered by him to the defendants in those suits.

The bond was in the penal sum of $500. The condi-

tion recited that Bean had been assaulted, as set forth in those suits—that they were then pending—that the parties had settled by paying Bean or giving notes to him for $175, for the injury sustained by the assault, and $150 costs and expenses incurred in attempting to procure justice—and that they had agreed that the suits should be dismissed.   That the settlement was considered by the plaintiff a fair, open and honorable adjustment of those suits—that, considering the pecuniary circumstances of the defendants, Bean had received due and reasonable satisfaction for the injury, or that that sum obtained by voluntary compromise was as well for him, as the chance of obtaining higher damages at the expense and trouble of prosecuting the suits—that a fulfilment of the terms of said settlement, with the expenses incurred by the defendants, was, in the opinion of the present plaintiff, an adequate punishment for the offence, if they were guilty, which they did not admit, and that the plaintiff was of opinion that all individuals, and the publick, if correctly informed, would acquiesce in the terms of said settlement, without instituting, aiding, or abetting any further suit or prosecution, of any sort, publick, or private, against the defendants for the offence.   The condition then recited that the obligees had suspicions that certain individuals who were named would still institute, aid, or abet some further prosecution, publick or private against them, or some of them, for the same offence— that the plaintiff knew the character of those individuals, and on that account had confidence that such men, under such circumstances, would not institute, aid, or abet any further suit or prosecution, and that to promote the adjustment of said suits, and the establishment of peace, friendship, and good order in the vicinity, the plaintiff had agreed to indemnify the obligors, against all further suits and prosecutions, for the offence aforesaid, which should be commenced, aided, or abetted by either of those individuals.  And the condition then provided that if

the plaintiff should well and truly indemnify the obligees, as aforesaid, the bond should be void, otherwise of force.

Upon this evidence the court instructed the jury that it was against the policy of the law, and illegal, for any person, in consideration of receiving a note, to undertake to save another harmless from the public justice ; and if they believed, from the evidence, that the giving of the bond in this case formed a part of the consideration of the note, then the note was void, and the defendant entitled to a verdict.

The jury returned a verdict for the defendants, and the plaintiff having moved for a new trial on account of misdirection, the case was reserved, and transferred to this court.

*Bell* and *Bartlett*, for the plaintiff.

*Carleton*, for the defendant.

PARKER, J. delivered the opinion.

The jury having found that the bond in this case formed a part of the consideration of the note in suit, the first question is, whether the bond is legal, or otherwise. If the contract entered into by the plaintiff, as set forth in the bond, be a legal contract, the direction to the jury was erroneous, and the verdict must be set aside.

So far as the bond undertakes to indemnify against any civil action it would be well, if nothing more was contained in the condition ; but the bond, so far as it concerns the consideration of this note, is an entire undertaking. The note was given in consideration of the whole bond, and not of any single part of it, and if any part of it be illegal, it is, so far as it affects this case, the same as if the whole terms and condition were illegal. We cannot separate the parts of it.

The bond contains a stipulation that the plaintiff shall indemnify the defendant, and others, from all publick prosecution, which may be instituted, aided, or abetted by certain individuals named, who, it seems to have been apprehended, would be disposed to cause some prosecu-

tion to be instituted, on account of the alleged assault and battery.

The question then comes to this. Is a guarantee of indemnity against a criminal prosecution, a lawful contract, furnishing a good consideration for a promissory note ?

It seems to us that there can be but one answer to this question.

How is an individual to indemnify in such case ? He has no power to stay the arm of public justice. He has no authority to prevent a prosecution. Any attempt so to do, by suppressing evidence, would be of itself illegal. 5 N. H. Rep. 553, *Plumer* v. *Smith*. If a prosecution is instituted, and conviction follows,—and it may here be remarked that all parties seem to have understood that an offence had been committed, although the obligees did not expressly admit it, the sentence of the law might be imprisonment of the offenders. But the obligor could not be vouched in to receive the sentence, and be subjected to the imprisonment in the place of those who had committed the crime, nor could he voluntarily offer himself to appease the demands of the law against the obligees. They must suffer the imprisonment, and how then is indemnity to be made, and compensation given for imprisonment in pursuance of a legal sentence of a court of justice, for an offence against the laws of the land. If the defendant were thus lawfully imprisoned, surely he would not be heard in courts of justice, in an action on his bond, to recover an indemnity for the suffering which the law had imposed upon him for its violation, nor, it is believed, was a hearing in chancery ever yet known, to estimate in dollars and cents how much damage it had been to an individual, that the righteous judgment of the law had been executed upon him.

The obligees, then, could not enforce this bond against the obligor upon this part of the condition, on account of its illegality.

But this is not all. The tendency of such an obligation is directly in conflict with the objects of the law.

It has been repeatedly held that it is illegal to suppress prosecutions for offences, and notes given upon such considerations are uniformly declared void. Bayley on Bills, 357 ; Chitty on Bills, Phil. Ed. 96 ; 1 Camp. 45, *Wallace* v. *Hardacre* ; ditto, 55, *Pool* v. *Bousfield* ; 5 N. H. Rep. 553, *Plumer* v. *Smith*, and cases there cited.

And so long as it is held illegal to suppress a prosecution, no court can sustain an obligation to indemnify against the consequences of one, for the manifest tendency of such obligation is to interfere with the due course of publick justice, and to suppress prosecutions for offences committed.

There is, of course, a direct interest in him who has guaranteed against a prosecution, on the supposition that his contract would be enforced against him, to use all exertions to prevent the institution of a prosecution, or if one be commenced to defeat it ; and it is, therefore, against the policy of the law that a contract founded upon such consideration should be enforced in a court of justice.

A further tendency of such contracts, if supposed to be legal, would be to induce individuals to speculate upon the chances of prosecution, and conviction for crimes. Of the various insurance offices known in the country, it is believed that none have graduated a scale of premiums for insurance against the legal penalty for crimes committed, or been authorized by charter to make such subject an object of insurance ; and yet, this obligation, if held legal, would be in effect, a kind of policy of insurances of that character, extending to certain designated risks, and perils. For a premium, more or less, the obligor undertakes the hazard, so far as certain individuals are concerned, and is to make good the damage in case a loss accrues.

It is, perhaps, proper to say that such a view was

probably not contemplated by the plaintiff in this case. His well known character furnishes a strong guarantee that he entered into this obligation with no evil intention, and probably from the motives set forth in the condition. But we cannot, in settling the law upon this subject, weigh the motives which actuated the plaintiff, and decide as we may suppose from his character that his motives were honest or otherwise. The contract itself is all that we can enquire into : as that is found legal or illegal the case must be decided, and however fair may have been the plaintiff's motives, we are constrained to declare the contract which he entered into illegal.

The plaintiff's counsel seem to have considered this first question untenable ground, and have argued that this note was given for the costs which had accrued in the civil suits. If this were well founded in fact, and the transaction disconnected from the bond, there would be no doubt that the claim was sustained. But it was in testimony in the case that the defendants in those suits refused to settle unless the bond was given, and it has been submitted to the jury, whether this note was given merely for the costs, or whether the execution of the bond formed a part of the consideration, and they have found the latter, and properly so, even from the terms of the bond itself.

It has been further argued that if the bond formed but part of the consideration of the note, the remainder of the consideration being the damages for the assault and battery, and the costs of the civil suits, the note is void only *pro tanto*, and the plaintiff entitled to a verdict for the amount of the damages and costs included in it.

This might be questionable, even if the consideration had been divided, and a certain sum included on account of damages and costs, and another sum on account of the bond. 3 Taunt. 226, *Scott* v. *Gilmore.* But it is unnecessary to settle this point, as there was no evidence tending to show this. The contract was entire, and a part of the

consideration being illegal the whole is void. 5 N. H. Rep. 196, *Carleton* v. *Whitcher* ; 4 N. H. Rep. 285, *Roby* v. *West* ; 7 D. & E. 201, *Chater* v. *Bickest* ; 8 Johns. 253, [2d Ed. 195,] *Crawford* v. *Morrell* ; 10 Barn. & Cres. 664, *Thomas* v. *Williams*.

The notes which were given may have been only for the amount of the damages, costs and expenses, as estimated. How this was did not appear, but if the fact were so it could not alter the case. The giving of the bond was as much a part of the consideration as the payment of the damages and costs. This note was given for both together—both together formed the consideration, and but for the bond the note might not, and probably never would, have had existence.

There are, therefore, no data by which the consideration could be apportioned, so as to give effect to this note for any part, and there must be

*Judgment on the verdict.*