## FULLER *v.* BEAN.

A promissory note given for liquors sold in this State without a license, although made in Boston, in Massachusetts, is nevertheless void by reason of the illegality of the consideration of it.

The existence of such a note will not create the relation of debtor and creditor between the maker and payee, so as to entitle the payee to question the validity of a sale of chattels, made by the payer to a third person, on the ground of fraud, or other illegality in the sale.

Where liquors were purchased in this State of one who had no license, by a person intending to make sale of the liquors without license, and the purchaser paid for the same and took possession thereof, and, also, in fact, made sale of a portion of the liquors without license, it was *held,* that the purchase and payment and possession, conferred sufficient title and possession, to enable the purchaser to maintain trespass against a mere wrong-doer.

Spirituous liquors are property in this State, and any person wrongfully dispossessing another of such property, is answerable as in the case of a like wrong committed with regard to other chattels.

TRESPASS, for taking and carrying away a quantity of goods on the 14th of August, 1852, alleged to be the property of the plaintiff, amounting to the sum of $627,83, and consisting principally of liquors.

The plea was the general issue, with a brief statement that the defendant was a deputy sheriff; that John Felton, of Boston, holding a note against David G. Fuller for the sum of $437,39, and dated on the 13th of May, 1852, brought a suit on the note on the 14th of August, 1852, and attached the goods for which this action was brought, and entered it in the court, where it was still pending, and that the goods were the property of David G. Fuller, and not the property of the plaintiff.

The plaintiff offered evidence that on the 13th of July, 1852, David G. Fuller owned the goods in question, which constituted his stock in trade in Concord, at which place he was then selling the liquors without license. On that day, being embarrassed, and owing the plaintiff, who is his brother, a considerable debt, exceeding the value of the goods, he sold

them for $727,36, to the plaintiff, who immediately took possession of them, and put an agent into the. shop where they had been sold before, and caused them there to be sold without having procured any license therefor.

The plaintiff paid for the goods by allowing the price on his claims against D. G. Fuller, who, at the same time, sold to the plaintiff the shop in which the goods were.

The defendant contended that as the plaintiff had no license, and as he purchased the goods of his brother David for the purpose of selling the liquors in violation of the license law, and did actually so sell them, he could not by the possession or sale of them from David, acquire any right to maintain any action for them against the right of the creditors of David, or the sheriff who seized them by virtue of an attachment to secure a debt against David, and that in such a state of facts the plaintiff acquired no rights to the liquors from David.

The note to Felton was given in Boston for liquors sold in New Hampshire, without license, by Felton to D. G. Fuller, and the liquors were delivered here. and the plaintiff contended that the note was therefore void, and that Felton did not stand in the position of a creditor to D. G. Fuller; that a part of the goods were not liquors, and were so stated in the bill of sale; that the price of each could be ascertained separately, and that the plaintiff could recover for such goods.

The plaintiff contended that the defendant was in no position to question the right of the plaintiff; that he was a mere trespasser, and could not justify under his process; that he had no license, and his sale of the liquor was in violation of the license law; that whatever the contract between the plaintiff and his brother might have been, the plaintiff had possession of the liquors, and the defendant had no right to disturb it; and that the defendant, by taking the goods for the purpose of selling them and realizing their value, in violation of the license law, and actually sell-

ing them, could not justify his acts, although he did the acts under color of his office as deputy sheriff.

A verdict was directed for the defendant, subject to the opinion of the court, upon which judgment was to be rendered, or it was to be set aside and a new trial granted, as this court might order.

*Rolfe & Marshall* and *Bellows*, for the plaintiff.

The plaintiff was in possession of the goods, and the defendant had no right to disturb it. It is wholly immaterial how the plaintiff acquired possession of the goods as against a mere trespasser, whether by a sale valid in law or not. It is enough that the plaintiff had possession and that the defendant took the goods away. But the property does pass by such a sale.

The law authorizes a license for medicinal, mechanical and chemical purposes, and no other; and provides that if any person not licensed shall sell, he shall be fined, &c. Comp. Stat. ch. 123, §§ 5, 6.

To expose the party to a penalty, there must be a sale, and, of necessity, such a sale as will pass the property, otherwise it is no sale. If it were executory, perhaps such a contract could not be enforced, but here it is executed. And no penalty is imposed on the buyer. *Roby* v. *West & a.*, 4 N. H. Rep. 284; *White* v. *Hunter*, 3 Foster's Rep. 128; *Williams* v. *Tappan*, 3 Foster's Rep. 385.

The distinction between a prohibition of a purchase and of a sale, is admitted in the first case cited. And the court say they should pause before allowing the defendants to withhold lottery tickets sold by them to the plaintiff and afterwards wrongfully taken into their possession, if it was a simple sale of lottery tickets, though the sale be prohibited by law. If the parties are in *pari delicto*, neither can maintain an action against the other. The case was directly settled in *Smith* v. *Bean*, 15 N. H. Rep. 577, and cases cited. In this case a sale of oxen was made Sunday, and executed.

Held, though illegal, that the vendee could hold them against the vendor, or his creditors. The law prohibits labor and work of a secular calling, &c.

The plaintiff, then, had both the possession and property in all the goods. A considerable portion were not liquors, but other goods, and sold at specified prices. As to those, it would be clear on other grounds that the sale was good. The defendant undertakes to justify under process against D. G. Fuller, alleging that the sale by D. G. Fuller was fraudulent as to creditors. We say that Felton was no creditor of D. G. Fuller's and not entitled to question the sale. And we may prove that the note of Felton's against the plaintiff was void, just as in a proper case we could show that it was not an existing debt. Felton's right to take the property would depend on his being a creditor or not. The note was given in Boston, for liquors sold in New Hampshire, and delivered here, and in fact here at the time of the sale. The sale, then, was clearly illegal, and had Felton sued for the price of the goods, he could not recover in our courts. The fact that the note was given for the price of the goods makes no difference. It was given without consideration. The defendant could not attach the liquors because he could not sell them. The law imposes a fine upon any person who shall sell without license, and sheriffs are not excepted. Selectmen can license the sale only for certain purposes—medicinal, &c. Comp. Stat. 270, §§ 5, 6.

If the defendant could get license at all, it could be to sell only for those purposes. Again, he can sell only at auction, and must sell to the highest bidder. Comp. Stat. 498, § 4.

This he could not do. It would be impossible to comply with the law and avoid the penalty. Besides, the property was sold on mesne process, and without license, and so the defendant is a trespasser from the beginning.

*Perley,* with whom was *Fowler,* for the defendant.

I.   The plaintiffs have devoted the goods to an illegal purpose.   *Gas Co.* v. *Turner,* 6 Bing. N. C. 321 ; *Terret* v. *Bartlett,* 21 Vt. Rep. 184 ; *Beach* v. *Kezer,* 1 N. H. Rep. 184.   That purpose was an illegal sale, and they were wholly devoted to it.   Where property is wholly devoted to an illegal use by the owner, he can maintain no action for it.   *Duncanson* v. *McClure,* 4 Dall. 314 ; Story Conf. Laws §§ 249, 259 ; *Woodman* v. *Hubbard,* 5 Foster's Rep. 69.   It stands like the case of goods shipped as supplies to an enemy.

II.   The plaintiff obtaining the goods by an illegal sale, acquired no property in them.   *Dobun* v. *Harris,* 10 Ala. Rep. 569 ; *Helps* v. *Glumister,* 8 B. & C. 553 ; *Roby* v. *West,* 4 N. H. Rep. 291 ; *Mitchell* v. *Ellsworth,* 31 Maine Rep. 249.   A purchase is necessarily implied in a sale, and is a part of the illegal transaction.   The goods, then, remained the property of D. G. Fuller ; although he is estopped to reclaim them by his guilty participation, his creditors are not ; they are not parties to the offence, and his rights are no test of theirs.   Creditors can hold the goods of a vendor in many cases where he could not.   In cases of fraudulent sales the parties are estopped, but not the creditors ; and so sometimes in contracts of sale within the statute of frauds, the vendor cannot hold the goods, but his creditors may.   By law it is the right of creditors to take if necessary all of a debtor's property not by law exempt from attachment.   If the goods were D. G. Fuller's property, the defendant attaching them by virtue of a writ against him was not a mere trespasser, and mere possession is not enough against him.

2.   The whole transaction shows the sale to the plaintiff to have been entire.

III.   The nature or validity of Felton's claim is immaterial, as the defendant attached the property of D. G. Fuller in obedience to a regular precept, which must protect him against the plaintiff, who had no rights in the property.

IV. Liquors are property, and liable to attachment, there being no common law or statute exemption. The license law applies only to private and voluntary sales, and not to compulsory sales by process of law.

2. But if such sales are within the statute, as liquors are property—(opinion of the justices on liquor law, 5 Foster's Rep. 540; *Preston* v. *Drew*, 33 Me. Rep. 561)—the sheriff may well attach, for he can procure a license and sell, and a sale by the quantity, at auction, to those licensed to sell, would be legal. *Wood* v. *Smith*, 23 Vt. Rep. 706. And this sale would realize the only legal market value they have.

3. It does not appear that the defendant had no license, or sold the goods. And if it did, the mere omission to procure a license would not make him a trespasser *ab initio*. *Hale* v. *Clark*, 19 Wend. 498; *Ferrin* v. *Symonds*, 11 N. H. Rep. 365; *Barret* v. *White*, 3 N. H. Rep. 217. Especially as the nonfeasance was not in respect to the attachment laws, and would not injure Fuller or the plaintiff.

WOODS, C. J. The note in suit, to secure which the liquors were attached, was given for liquors sold in this State in violation of the license law. It is no matter that it was given in Boston. The consideration of the note was nevertheless illegal, and for that cause the note is void. *Clark* v. *Ricker*, 14 N. H. Rep. 44; *Lewis* v. *Welch*, 14 N. H. Rep. 294; *Carleton* v. *Bailey*, 7 Foster's Rep. 230; *Carleton* v. *Woods*, 8 Foster's Rep. 290. Felton, then, does not stand in the relation of a creditor to D. G. Fuller, having no lawful claim against him, and so is in no condition to question the validity of the sale to the plaintiff. *Walker* v. *Lovell*, 8 Foster's Rep. 138.

The purchase and payment made for the liquors by the plaintiff, together with the possession of them, as set forth in the case, are sufficient evidence of title, and a sufficient possession to enable the plaintiff to maintain the action against the defendant, who is a mere wrong-doer. Spiritu-

Fuller *v.* Bean.

ous liquors are property in this State, (Opinion of the Justices, 5 Foster's Rep. 540,) and no person has a right to dispossess another of such property by force, and if done without right, the person doing it must be answerable for its value, as for other property. Bean, in this case, standing in the place and stead of Felton, stands no better than he would, and consequently cannot properly claim that Felton was a creditor of D. G. Fuller, and cannot defend the action upon that ground.

But if no recovery could be had for the liquors, still, most clearly, the value of the goods other than the liquors could be recovered in this action, and in that view the ruling in the case was erroneous. *Carleton* v. *Woods*, and *Walker* v. *Lovell*, before cited. The decision of the other questions arising in the case is immaterial, and is omitted.

*Verdict set aside.*